2017CH000155

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
### CHANCERY DIVISION

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
****** Electronically Filed ******

KELLY JERKATIS,                          )
                                         )
      Plaintiff,                     )
                                         )     17CH155
      vs.                            )     No:
                                         )
BOARD OF EDUCATION OF                    )
LINCOLN-WAY WEST                         )
SCHOOL DISTRICT #210,                    )
and Laura Erlenbaugh, Director of Special )
Services, in her official capacity and    )
Individually,                            )     JURY TRIAL DEMANDED
                                         )
      Defendant.                     )

Trans. ID : 17J9781553
Case No. : 17CH155
FIl.EDATE : 01/23/2017
Clerk : JCHK
File Time : 4:30PM

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff, KELLY JERKATIS, through her attorneys, Esposito

& Staubus LLP, and for her Complaint for Injunctive and Other Relief against

Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL

DISTRICT #210, states as follows:

1.      Plaintiff Kelly Jerkatis was at the time of the injury and currently is a

resident of Illinois.

2.      Defendant Lincoln Way West School District #210 was at the time of

the injury and currently is a public-school district of Illinois.

**Initial case management set for**
**at:** 9:00AM **a.m.**
05/15/2017
Transaction ID : 1719781553

1


EXHIBIT
1

3.      Venue is appropriate in State of Illinois, County of Will, as the parties are both residents of Illinois and the subject incident occurred in the New Lenox, Will County, Illinois.

4.      Plaintiff was a substitute teacher who worked for the Defendant's school district.

5.      On August 18, 2015, Rob Schiffbauer, the Director of Personnel for Defendant, offered Plaintiff three consecutive maternity leave substitution positions in the special service department at Lincoln Way West beginning on August 19, 2015.

6.      Plaintiff worked the first of these maternity leave substitution positions from August 19, 2015 to November 20, 2015 without any incident.

7.      On January 4, 2016, Plaintiff began working the second maternity leave substitution position.

8.      During the first week of the second position, January 4-8, Lori Macaluso, a paraprofessional/ teacher's aid in Plaintiff's classroom, called in sick and did not come to work.

9.      Also during this first week, a developmentally challenged minor female student (the "minor student") being taught in Plaintiff's classroom, had no behavioral issues and even earned awards for her good behavior.

2

2017CH000155

10.     On January 14, 2016, Plaintiff was in the lunch room when Macaluso took away the minor student's lunch goldfish crackers and threw them into a plant with no explanation.  The minor student began to cry, and got very upset that something was taken from her lunch.  Macaluso told the minor student to just eat her lunch while laughing at the minor student.  Two paraprofessionals appeared and Macaluso informed them while laughing that they would have to deal with the minor student.

11.     Later, on January 14, 2016, Plaintiff heard the minor student, a usually non-verbal person, scream, "No, Miss Lori!" and then, "shit to Miss Lori!"

12.     On January 19, 2016, Plaintiff was substitute teacher in charge of about twelve students in the card-making room for special education students, along with Macaluso and three other female paraprofessionals or teacher aides.  Macaluso and the minor student were sitting next to each other, with Macaluso to the student's right.  The minor student's job that day was to sort beads.  Macaluso several times told the minor student to "work faster," each time raising her voice to a higher level. When the minor student resisted, Plaintiff saw Macaluso put her hands on the minor student's hands and moving them around to try to sort the beads. Plaintiff heard "No, Miss Lori," turned and looked and observed Macaluso's left hand firmly on the minor student's right leg above the kneecap, Macaluso's left hand thumb and fingers straddled the minor's students knee cap area.  Plaintiff asked the minor student if she

3

was all okay, Macaluso released her grip and removed her hand from the minor student's leg, and the minor student responded, "[minor student's own name]'s not okay!" Plaintiff motioned the minor student to go to Plaintiff, but Macaluso said, "I get to finish what I started, and you cannot intervene!" Macaluso told Plaintiff she was handling the matter, and tightly grabbed both the minor student's wrist and pulled them across the minor student's body so the minor student could not get away. Then, the bell rang. Plaintiff had to leave the classroom with the other special education children as they the other minor children left the classroom. The minor student would have otherwise left the room with the other special education students, but for the fact that she was being detained by Macaluso.

13.     Plaintiff told one of the other teacher aides what she saw. The other teacher aide said she knew something was not right about that scream, and quickly ran back into the classroom where Macaluso and the minor student were.

14.     On January 20, 2016, Plaintiff told Defendnat's secretary to Defendant's Special Education Department what had occurred on January 19, 2016, and asked to whom she should report the January 19, 2016 incident. She was told to report through the proper channels to Laura Erlenbaugh, Director of Special Services ("Director"), first, and that Laura would then report it to Monica Schmidt. However, she was told that Erlenbaugh would not be at the school until January 22, 2016. No one told Plaintiff to report the matter the DCFS at that time.

4

15.     The next day, January 21, 2016, none of Plaintiff's paraprofessionals would speak with Plaintiff about anything including information about another particular student's medication from the school nurse, and thereafter engaged in a pattern and practice of freezing Plaintiff out of work-related conversations including medications required, and other disruptive behavior which made it difficult and dangerous for Plaintiff to do her job.  At least two of Plaintiff's teaching aides told Plaintiff they would not perfom tasks assigned by Plaintiff.  Plaintiff's material on Martin Luther King, Jr. had been taken done without Plaintiff's approval.

16.     Also during January 21, 2016, Macaluso randomly told Plaintiff that she, Macaluso, was not an angry person.  Macaluso also went on to say the minor student was the angry person.

17.     On January 22, 2016, Plaintiff left a note for the Special Services Director asking to meet with her.  Thereafter the same day, Plaintiff saw a note from the minor student's mother in the minor student's notebook between the student's mother and the teacher.  The note stated, among other things, that there was "a nasty bruise on her [daughter's] right knee."  The minor's mother wanted to know where the bruise came from, and stated that, whenever her daughter was asked about how it happened, the minor student would become very upset.

18.     Later, on January 22, 2016, the Director pulled Plaintiff out of class to meet with her.  Plaintiff described everything that she saw happen on January 19,

I2F SUBMITTED - 1719781553 - ESPOSITO7500 - 01/23/2017 05:13:14 PM                    DOCUMENT ACCEPTED ON: 01/24/2017 12:04:46 PM

2017CH000155

2006. The Director responded that Macaluso would never hurt a minor, Macaluso was allowed to be left alone with a minor, and that Macaluso could grab a minor's knee or wrists if she felt it was necessary. When Plaintiff brought up the note from the minor student's mother and asked how to respond to the parents, the Director stated that Macaluso would be the one to respond to the mother, because Macaluso she knows what happened.

19.     Also on January 22, 2016, another aide asked Plaintiff why she was called out of the class. Plaintiff told the aide what had occurred and about the note. Plaintiff and the aide observed a bruise above the knee and on both sides of the knee. The aide immediately commented, "That's easy; that [the bruise that the mother mentioned] happened in gym class when [the minor student's name] fell while playing kickball." The aide then asked the minor student to show them her right knee. Plaintiff observed a bruise above the top of the right knee. The aided then asked the minor student *if* her bruise occurred in gym class. The minor student developmentally yelled, "No, not in gym class, other people did this!"

20.     Throughout the rest of the January 22, 2016 work day, the Plaintiff's teacher's aides would not speak to Plaintiff. They then repeated at least three time to the minor student that the minor student's bruise came from gym class.

21.     On Sunday, January 24, 2016, Plaintiff emailed the Director of personnel asking to talk.

6

2017CH000155

22.     On January 25, 2016, again the teacher's aides would not communicate with Plaintiff, and would not relay messages from parents to the nursing staff that a child needed medication sent home.  At one point, Macaluso and another aide left the classroom without Plaintiff's consent illegally, leaving Plaintiff with only one aide; before they did, Plaintiff heard one of the aides state, "Don't let Kelly near [the minor student's name].

23.     Later in the school day on January 25, 2016, Principal Schmidt entered Plaintiff's classroom for the first time ever.  Principal Schmidt approached another student and while looking at Plaintiff asked the student, "[student's name], are you in a bad mood?  Because I am in a bad mood.  In fact, are you angry?  Because I am angry."  Principal Schmidt then walked up to Macaluso, put her arms on Macaluso's shoulders, told Macaluso that this will all be fine, and left without addressing Plaintiff.

24.     Historically, the substitute teacher, not the teacher's aide, is to write to the parents. Macaluso then wrote to the parents. On January 25, 2016, Plaintiff also found the parent's first note about the bruise, removed from the minor student's netbook removed from the notebook, torn, and thrown away into the garbage.

25.     After school on January 25, 2016, Plaintiff went to the Director of Personnel's office to speak with him.  Plaintiff described to him had occurred and he stated that he would investigate the incident.

7

26.     On January 27, 2016, the Director of Personnel called Plaintiff to tell her that the investigation had concluded and nothing would be done. Plaintiff stated that she it would be difficult to continue to work in the classroom with Macaluso and ask what they would do. Furthermore, Plaintiff described how the teacher aides would no longer speak to her or give her information that was necessary to do her job. The Director of Personnel stated that all staff members would remain the same. The Director of Personnel stated that Plaintiff could still substitute teach, but unless she was willing to continue to work with those teacher's aides including Macaluso, she could not return to Lincoln Way West.

27.     Neither the Director of Personnel nor any other administrator ever told Plaintiff to report the matter to the Illinois Department of Child and Family Services.

28.     Later, on January 27, 2016, Plaintiff's teacher's aide who stayed in the room with the minor student on January 19, 2016 when Plaintiff left the classroom at the bell, stated that she, the aide, had been removed from the classroom.

29.     Still later, on January 27, 2016, the secretary of the Special Service Department (who is also the substitute teacher coordinator) called Plaintiff to book her to substitute starting on January 29, 2016. The next day, January 28, 2016, the secretary of the Special Service Department called Plaintiff and left the message that her assignment was canceled and given to another substitute teacher, an action that had never previously occurred.

8

2017CH000155

30.     On January 29, 2016, Plaintiff learned that mandated reporting required her to immediately contact DCFS regardless of whether she had also contacted school administrators when witnessing what she believed was child abuse, as opposed to just calling administrators which Plaintiff had mistakenly believed was the protocol.

31.     Plaintiff made a telephonic report with DCFS on January 31, 2016.

32.     Plaintiff met with the DCFS investigator at the DCFS on February 5, 2016.

33.     After February 5, 2016 and before DCFS had made their determination on the incident, Erlenbaugh had a meeting with the special education department after Macaluso had returned to work. Erlenbaugh referred to Plaintiff as a "proven liar" to the employees at this meeting when discussing the abuse and the report to DCFS.

34.     Plaintiff had been promised successive long-term substitute teaching jobs, making twice as much pay. That did not happen. Instead Plaintiff was required to return her school building keys, her email account was shut off, and she was no longer offered substitute teachings assignments at Lincoln Way West.

35.     Defendant stopped calling Plaintiff for not only long-term substitute teaching work, but all substitute teaching work in general. Defendant claimed that this was because Plaintiff never called Defendant back to indicate she wished to

9

continue taking substitute teaching positions with Defendant. However, Defendant never called Plaintiff about any possible positions after February 5, 2016.

## COUNT I
### Whistleblowing – Public Employee Free Speech

36.     Paragraphs one through thirty-five (1-35) are incorporated herein by reference as paragraph thirty-six (36).

37.     The Supreme Court has ruled that free speech by public teachers involving matters of public concern are protected by the First Amendment from censure by their State employers.  However, the Supreme Court did not say that all speech was allowed.  The Supreme Court gave a balancing test that stated, "the interests of the [employee] as a citizen, in commenting on matters of public concern" must be balanced against "the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563, 568 (1968).

38.     Plaintiff exercised her First Amendment Right when she registered a complaint with DCFS.

39.     Plaintiff's complaint was concerned a legitimate matter of public concern: the abuse of developmentally challenged children by those meant to foster and nurture them – their teachers and the teaching staff.

40.     The state has no legitimate interest in prohibiting this speech.  The State has an interest in protecting those who are vulnerable, such as developmentally

10

challenged children. The State created schools as a place to foster children's education in a safe environment, not to physically abuse children. There is no legitimate interest in stopping a teacher from reporting an incident of abuse of a child to superiors or DCFS. Furthermore, reporting is mandated by Illinois law pursuant to 325 ILCS 5/4.

41.     Defendant retaliated against Plaintiff by no longer communicating with Plaintiff in the classroom, cutting staffing in her classroom, making the classroom dysfunctional such that Plaintiff had to leave, revoking a teaching assignment Plaintiff had at another school in the district, and disabling Plaintiff's school e-mail account.

42.     As a direct and proximate result of Defendant's discrimination and/or retaliation against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

43.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**WHEREFORE**, Plaintiff KELLY JERKATIS, prays for judgment in her favor and against Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, a unit of local government, body politic, political subdivision and municipal corporation, for compensatory damages in amounts to be proven at trial, plus her expenses, costs and statutory attorneys' fees, and such other relief the Court may find appropriate.

## COUNT II

### Discrimination for Reporting to DCFS in Violation of 325 ILCS 5/9.1

44.     Paragraphs one through thirty-five (1-35) are incorporated herein by reference as paragraph forty-four (44).

45.     Section 9.1 of the Illinois Abused and Neglected Child Reporting Act states, "No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected child abuse or neglect."

46.     Plaintiff made a good faith oral report of an incident of child abuse she saw while working for the Defendant of another employee of the Defendant to her supervisor.

12

47.     Plaintiff then made a formal written report to the Illinois DCFS after learning that the "investigation" yielded no results and that Plaintiff was required to report the incident DCFS because, as a teacher, Plaintiff was a mandated reporter.

48.     Defendant retaliated against and discriminated against Plaintiff by revoking a teaching assignment Plaintiff had at another school in the district, and disabling Plaintiff's school e-mail account.

49.     As a direct and proximate result of Defendant's discrimination and/or retaliation against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

50.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**WHEREFORE**, Plaintiff, KELLY JERKATIS, prays for judgment in her favor and against Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, a unit of local government, body politic, political

subdivision and municipal corporation, for compensatory damages in amounts to be proven at trial, plus her expenses, costs and statutory attorneys' fees, and such other relief the Court may find appropriate.

### COUNT III
### Violation of The Illinois Whistleblower Act
### 740 Ill. Comp. Stat. §174/15(b)

51.  Paragraphs one through fifty (1-50) are incorporated herein by reference as paragraph fifty-one (51).

52.  School districts are covered as employers under the Illinois Whistleblower Act. 740 ILCS 174/5.

53.  The Illinois Whistleblower Act, 740 ILCS §174/15(b) states, "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

54.  The Illinois Whistleblower Act allows for damages when, "an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for *all relief necessary to make the employee whole*, including *but not limited to* the following, as appropriate:

   a.  reinstatement with the same seniority status that the employee would have had, but for the violation;

14

    b. back pay, with interest; and

    c. compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees."

740 ILCS 174/30 (emphasis added).

55.    Plaintiff, as a mandatory reporter, had reasonable cause to believe the information of a paraprofessional hurting a developmentally challenged child was against Illinois law.

56.    Furthermore, Plaintiff has a reasonable cause to believe that not reporting the observed abuse would violate the Illinois Abused and Neglected Child Reporting Act, after learning more about the mandatory disclosures.

57.    After Plaintiff made her disclosure to the DCFS, Defendant retaliated against her by taking her off her assignment and not providing any more substitute positions, even though some were available.

**WHEREFORE**, Plaintiff, KELLY JERKATIS, prays for judgment in her favor and against Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, a unit of local government, body politic, political subdivision and municipal corporation, for compensatory damages in amounts to be proven at trial, including, and such other relief the Court may find appropriate.

2017CH000155

## COUNT IV
### Retaliatory Discharge

58.     Paragraphs one through thirty-five (1-35) are incorporated herein by reference as paragraph fifty-eight (58).

59.     There are three elements a plaintiff is required to prove to sustain a tort for retaliatory discharge: first, an employee must establish that she has been discharged; second, she must demonstrate that her discharge was in retaliation for her activities; and, finally, she must show that the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991).

60.     Illinois has recognized retaliatory discharge arising under the circumstances where an employee reported unlawful conduct their supervisors/employers. *See Petrik v. Monarch Printing Corp.*, 444 N.E.2d 588 (Ill. App. 1982); *Belline v. K-Mart Corp.*, 940 F.2d 184, 187 (7th Cir. 1991).

61.     An employee can be either actually terminated or constructively discharged.

62.     A constructive discharge constitutes an adverse employment action. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 129, (2004); *See also Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

63.     A constructive discharge occurs when the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable. *Id.* at 147; *Roby v. CWI, Inc.*, 579

16

2017CH000155

F.3d 779, 785 (7th Cir. 2009); *see also EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002).

64.    Defendant made it unreasonable for Plaintiff to continue working for the Defendant after she reported the illegal abuse of Defendant's other employee. The paraprofessionals in Plaintiff's classroom would not speak to her and actively worked in opposition to her work.   These aides are essential to accomplishing teaching these developmentally challenged children because they require individualized attention.

65.    Defendants would not only ignore Plaintiff in the classroom, but would also not tell Plaintiff about messages from the students' parents and/or from the school nurse.  Not only did Plaintiff's job require knowing this information, but it was also extremely dangerous towards the children to not have Plaintiff know this information.

66.    Furthermore, the Principal purposefully undermined Plaintiff in class in front of the students.

67.    Plaintiff could not continue being in charge of a classroom where she witnessed an aide abuse a child and then lie about it.  The Defendant made the position unbearable by deciding to ignore the unethical, dangerous, and illegal actions.  Any reasonable person would not find it bearable to work in a classroom

17

with someone who abused developmentally challenged children, one of the most vulnerable groups of people.

68.     After Plaintiff left this position due to the unreasonableness of the working conditions, offers of additional substitute work by the Defendant became unavailable, such as the third long term position offered August 18, 2015.

69.     Defendant turned off Plaintiff's work email account.  Former work email accounts, while the time substituting have ended, are still functional.

70.     Plaintiff had glowing reviews and everything was going well until Plaintiff reported the actions of Macaluso.  After this, each retaliatory behavior began.

71.     There is no public policy that will support the abuse of developmentally challenged children, not reporting an incident to both superiors and DCFS, or punishing a teacher for attempting to protect her students.  Public policy *demands* reporting to superiors and DCFS anything seen if in certain positions, such as Plaintiff was in, with mandated reporting.

**WHEREFORE**, Plaintiff, KELLY JERKATIS, prays for judgment in her favor and against Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, a unit of local government, body politic, political subdivision and municipal corporation, and asks that this Honorable Court award her direct and consequential damages, lost wages and benefits, liquidated damages,

I2F SUBMITTED - 1719781553 - ESPOSITO7500 - 01/23/2017 05:13:14 PM                    DOCUMENT ACCEPTED ON: 01/24/2017 12:04:46 PM

front pay, back pay, punitive damages, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as this Honorable Court may find appropriate.

## COUNT V
### Injunctive Relief

72.      Paragraphs one through thirty-five (1-35) are incorporated herein by reference as paragraph seventy-two (72).

73.      Plaintiff is required to establish four elements with specific facts to receive injunctive relief: (1) a protectable right, (2) irreparable harm, (3) an inadequate remedy at law, and (4) a likely success on the merits. *Murges v. Bowman*, 627 N.E.2d 330, 337 (Ill. App. 1993).

74.      As a teacher, plaintiff has a protectable right and a liberty interest in freedom from arbitrary and capricious decision-making and retaliation by Defendant for complying with state-mandated laws in regard to the safety of students and in particular the reporting of possible child abuse.

75.      Plaintiff will suffer irreparable harm if an injunction is not granted because Plaintiff relies on income from her substitute teaching job.

Without a letter of recommendation from the Defendant required to et another position and/or is unable to find a job that either:

19

a. Pays as well as her substitute teaching position with Defendant;
or

b. She would be required to travel a greater distance to perfom a
similar job.

Furthermore, Plaintiff has only been able to find work as a paraprofessional,
which her experience exceeds and which allows a lower salary.

76.     Plaintiff has no adequate remedy at law if an injunction is denied
because the injury can sustain for the Plaintiff for the rest of her working days.
However, this can be mitigated by an injunction to bring Plaintiff back as a substitute
teacher.

77.     These facts establish that the Plaintiff has established a likelihood of
success on the merits of the case because Plaintiff lost her position as a substitute
teacher as a direct result of telling school officials and the DCFS about the abuse of
the developmentally challenged student.

78.     The balance of hardships weighs in favor of the Plaintiff. Defendant
does not lose anything by giving Plaintiff substitute teacher work back in the district
and gains an experienced and well liked employee. However, not granting this
injunction causes Plaintiff not only economic damage but career/time damage from
no longer working as a teacher.

2017CH000155

**WHEREFORE**, the Plaintiff respectfully prays that this Honorable Court issue an injunction for the Defendant, BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, to bring Plaintiff back to work as a substitute teacher and any and all other relief the court deems appropriate, equitable and just.

## COUNT VI
### Defamation Per Se

79.     Paragraphs one through thirty-five (1-35) are incorporated herein by reference as paragraph seventy-seven (78).

80.     The false and unfounded spoken allegation against Plaintiff as stated in Paragraph thirty-three (33) was made and published in bad faith and attributes to Plaintiff a lack of ability with her profession, and/or otherwise harms Plaintiff as being injurious to her in her profession, both of which also casts Plaintiff in a false light.

81.     The foregoing defamatory statement was not protected by qualified privilege. Alternatively, if the statements were protected by a qualified privilege, Verizon Wireless abused the privilege because the statements were false and Verizon Wireless knew that they were false and/or were not investigated prior to the statements publication.

82.     The oral statements were made by a director, who is a superior, while in the scope of her employment to multiple employees, including plaintiff's peers who had no right to know.

21

2017CH000155

83.      As the aforesaid false and defamatory oral statements constitute defamation per se, no damages need be alleged or proved as damages are presumed.

**WHEREFORE**, Plaintiff, KELLY JERKATIS, demands judgment against BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210, for compensatory damages in an amount in excess of the minimum amount required for jurisdiction in Will County, consequential damages including but not limited to attorneys' fees and expenses related to the investigations, and exemplary damages in the amount of $10,000,000 in order to punish BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210 and deter BOARD OF EDUCATION LINCOLN-WAY WEST SCHOOL DISTRICT #210 from similar conduct.

**JURY TRIAL IS DEMANDED FOR ALL COUNTS.**

Respectfully submitted,
**KELLY JERKATIS,**
Plaintiff
By: /s/ Nicholas F. Esposito
One of His Attorneys

Nicholas F. Esposito
Christopher P. Rubey
**Esposito & Staubus LLP**
7055 Veterans Blvd., Unit B
Burr Ridge, Illinois 60527
(312) 346-2766
nfe@eslaw500.com
Firm ID No. 42935

22

2017CH000155

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
### CHANCERY DIVISION

KELLY JERKATIS,                           )
                                          )
                    Plaintiff,            )        17CH155
                                          )
          vs.                             )        No:
                                          )
BOARD OF EDUCATION OF                     )
LINCOLN-WAY WEST                          )
SCHOOL DISTRICT #210,                     )
and Laura Erlenbaugh, Director of Special )
Services, in her official capacity and    )
Individually,                             )        JURY TRIAL DEMANDED
                                          )
                    Defendant.            )

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
****** Electronically Filed ******

Trans. ID : 1719781553
Case No. : 17CH155
FILEDATE : 01/23/2017
Clerk : JC1IK
File Time : 4:30PM

### AFFIDAVIT OF DAMAGES
### SUPREME COURT RULE 222

The undersigned being first duly sworn upon oath, deposes and states that he is the

attorney representing the Plaintiffs in the above entitled cause of action seeking money damages

and states that this cause of action does exceed $50,000.

Respectfully submitted,

**KELLY JERKATIS,**

Plaintiff

By: /s/ Nicholas F. Esposito

One of Her Attorneys

Nicholas F. Esposito, Atty. # 0755176
Bradley K. Staubus, Atty. # 6230326
Christopher Crimer # 6319104
Christopher Rubey # 6324580
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B

2017CH000155

Burr Ridge, IL 60527
(312) 346-2766
nfe@cslaw500.com
Firm ID No. 42935

# IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
## CHANCERY DIVISION

KELLY JERKATIS,                          )
                                         )
               Plaintiff,       )
                                         )
          vs.                        )          No:17 CH155
                                         )
BOARD OF EDUCATION OF                    )
LINCOLN-WAY WEST                         )
SCHOOL DISTRICT # 210,                   )
and Laura Erlenbaugh, Director of Special )
Services, in her official capacity and   )
Individually,                            )          JURY TRIAL DEMANDED
              Defendant.      )

### NOTICE OF WAIVER OF SERVICE OF SUMMONS

To: Board of Education of Lincoln- Way West School District #210
    1801 E. Lincoln Highway
    New Lenox IL 60451

The enclosed summons and complaint is served pursuant to Section 2-213 of the Code of Civil Procedure. You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 30 days.

You must sign and date the acknowledgement. If you are served on behalf of a corporation, unincorporated association (including partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority. If you do not complete and return the form to the sender within 30 days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other matter permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 60 days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on  2/8/17 .

Signature: _____  Date of Signature: 2/8/17

Nicholas Esposito
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, Illinois 60527
(312) 346-2766; Attorney No.: 42935

**EXHIBIT 2**

## ACKNOWLEDGMENT OF RECEIPT
## OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at:

Board of Education of Lincoln- Way West School District #210
1801 E. Lincoln Highway
New Lenox IL 60451

PRINT or TYPE Name _____

Relationship to Entity/Authority to Receive Service of Process

_____

Signature:_____     Date of Signature:_____



RECEIVED

FEB 2 1 2017

## ACKNOWLEDGMENT OF RECEIPT
## OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at:

Board of Education of Lincoln- Way West School District #210
1801 E. Lincoln Highway
New Lenox IL 60451

PRINT or TYPE Name  *Rob Schiffbauer*

Relationship to Entity/Authority to Receive Service of Process

*Director of Personel*

Signature: _____   Date of Signature: *2/16/2017*

EXHIBIT

3



RECEIVED

FEB 2 1 2017

## ACKNOWLEDGMENT OF RECEIPT
## OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter at:

Laura Erlenbaugh, Director of Special Services, in her official capacity and Individually
Board of Education of Lincoln- Way West School District #210
1801 E. Lincoln Highway
New Lenox IL 60451

PRINT or TYPE Name _Laura Erlenbaugh_

Relationship to Entity/Authority to Receive Service of Process

_self_

Signature: _____      Date of Signature: _2/14/17_